Good morning, Your Honors, and may it please the Court, my name is Sabrina Raghi, on behalf of the petitioner, Mr. Orbelín Lara-Vivas. With the Court's permission, I would like to reserve two minutes for rebuttal. In this case, the issues before the Court are whether there was an abuse of discretion in denying the continuance, whether the BIA erred in denying the petitioner's withholding of removal, and CAC claim. It is our position that there was a due process violation. The petitioner is eligible for withholding and CAC. For the following reasons, we request the Court reverse the lower court's decision and remand in order to provide my client a full and fair hearing. To my first point, the immigration judge abused his discretion in denying the continuance, stating that there was no good cause based on two continuances and the fact that the motion to change venue stated that there were no witnesses other than the petitioner. In a matter of LABR, the immigration judge considers four factors. Nature of the evidence excluded as a result of the continuance, reasonableness of the immigrant's conduct, inconvenience to the Court, and number of continuances previously granted. Analyzed together, the agency's argument that there was no good cause because of two continuances is incorrect because looking at the two continuances that they were arguing were April 18th continuance where specifically it was only to look for another attorney. Didn't the petitioner's counsel also make a representation that there would only be a change of venue that specifically stated at this time there will only be one witness? So that means... At that time he surely knew about his brother, right? Yes, but there could be an array of things that could have been going on in the background, which we don't know, but at that time there was only that witness. Counsel, what was that time? How far in advance of the hearing was the motion for change of venue filed, please? It was filed in June, July 19, 2018. It was filed. Right, and so the answer to the question is, is it three months? Yeah, July, yeah. So your strongest argument that there was an abuse of discretion for not continuing the hearing is what? I mean, we have to look at the totality of the case here because really in reality there was only one continuance for the attorney to prep himself for the case. That first continuance was a case for a continuance just to seek an attorney, so in reality that shouldn't even be taken into consideration because that attorney wasn't even present at that time. Do you want to discuss the credibility determination? Yeah, and so the fact that there was no continuance granted really affected. It was very prejudicial to my client because the immigration judge in part based his decision on that. There was no witnesses to corroborate the persecution and the torture that my client received by the Mexican cartel and the one police officer. So, and that very testimony that could have been brought in if there was a continuance in order to bring that testimony. And the petitioner- Counselor, if I could interrupt, so I want you to focus on this if I could. If we find that there was not an abuse of discretion and not continuing, then he's got one witness. So there were other reasons that the BIA cited in support of this adverse credibility determination. Could you please engage with those? Yeah, so when the immigration judge stated that there was no corroboration in terms of the persecution and the kidnapping, and the testimony was very clear on his reasonable fear and his declaration and his testimony all stated that he was kidnapped. There was one fact that was added in the testimony of the petitioner in his merits hearing about the burning of the cigarettes that the judge said that was inconsistent with his previous declaration, which it is our position that that was not a self-serving. It was one of the least harmful things that happened to Because I think it is important, it was important to the BIA that he hadn't mentioned it until his testimony. There's this colloquy in that transcript about him where the IJ, he wants to show the scar. The IJ says you should have supplied a photograph. But then it appears to me that he quite clearly was allowed to show the scar on his arm. The lawyer says go ahead, show it. But then I don't see a finding anywhere about what the IJ saw on the arm, whether there was or was not a scar. Is that somewhere in the record? No, there's nothing in the record that I have seen on that, no. All right, what about the concern about the use of the word torture? Do you want to speak to that? Yeah, so in terms of the torture, the immigration judge stated that he did not say he was tortured in his reasonable fear interview. And then he stated that he was tortured during his testimony. It's our position that it's unreasonable for an immigration judge to require an individual know what the meaning of torture was. And his explanation was very reasonable in the sense that his definition of torture was dismemberment. And it's not, it shouldn't be held against him that he doesn't know the legal term of torture, which can include an array of things and the totality of what happens in a situation. And here, the fact that he did not know, he said he was tortured, and then that he described the same thing except for the cigarettes. And the same thing in his previous testimony should not be held against him and his credibility. Before you run out of time, there's an alternative finding that he could safely relocate within Mexico. Why was that not supported by substantial evidence? Well, your honor, it's our position that it was supported by substantial evidence. There was country conditions all stating that Mexico government is intertwined with the cartel. Yes. Can you, before you finish, can you address the government's 28-J letter, which I guess states that we don't have jurisdiction over this appeal of a reinstatement order? Yeah, so the cases cited by the government are not precedent, first of all. And they're arguing mere dicta because in Nasrallah v. Barr, that case is actually favorable to my client because they were actually, the court was actually discussing that they do have, the courts of appeals do have jurisdiction to hear CAC claims, which are, therefore, and that they do have the ability to review the factual challenges. Yes, with a stricter standard of review, however, that they do have that. And on top of that, that case clearly stated that they don't, they are not making a decision on whether there is jurisdiction. But if we do, if we're going to look at the mere dicta, we should look at the entire case clearly stating that courts of appeals do have jurisdiction to hear the factual challenges. But since then, the Second Circuit, as you know, interpreted that Supreme Court case as implying that the circuit courts don't have jurisdiction and it held in that case. The question is, should we, you know, consider that Second Circuit case at least persuasive? No, Your Honor, because that's the Second Circuit that is using a US Supreme Court decision. And that US Supreme Court decision should be at least more persuasive in this case, because they are, the court is actually discussing the jurisdiction for CAC claims. And they are clearly stating, and they held that the lower courts or the courts of appeals do have jurisdiction to review those factual challenges under a stricter standard. Anything further? All right, we'll hear from opposing counsel. Thank you, Your Honors, and may it please the court. Katie Rourke on behalf of the government. Before turning to the merits of petitioner's claims, I would first like to reiterate that we do not have jurisdiction. As set forth in our 28J letter, it is the government's position that the court does not have jurisdiction over the petition for review because it was not filed within 30 days of the reinstatement of petitioner's removal order. And the immigration judge's determination in petitioner's withholding only proceedings did not constitute a final order of removal because it had no bearing on petitioner's removability from the United States. Historically, the government has taken the position and the court of appeals have agreed that finality for purposes of judicial review occurs only after the completion of all proceedings connected to the reinstatement order, including the completion of withholding only proceedings. However, as Judge Teshima noted, the Supreme Court has called that position into question with its decisions in Nasrallah and Guzman-Chavez. In Nasrallah, the court held in relevant part that an order denying cat protection is not a final order of removal because it is not an order concluding that the non-citizen is deportable or ordering deportation. The court further noted that such orders do not merge into the final order of removal because a cat order does not affect the validity of a final order of removal. Similarly, in Guzman-Chavez, the court actually rejected the non-citizen's contention that a removal order does not become administratively final until the withholding proceedings conclude, which would be directly on point for this petitioner's case. And they reasoned that removal orders and withholding only proceedings address two distinct questions. As a result, they end in two separate orders and the finality of the order of removal does not depend in any way on the outcome of the withholding only proceedings. And the court also emphasized that an order denying withholding of removal is not a final order of removal because the removal order remains in full force and DHS retains the non-citizen from the United States to any authorized country. In light of these decisions, the government believes that a non-citizen who wishes to challenge a reinstatement order must file within 30 days of reinstatement without waiting for the conclusion of withholding only proceedings because the reinstatement order is the relevant final order of removal for jurisdictional purposes. And then once that petition is filed, review of the agency's withholding only decisions could be folded into review of the petition review pursuant to the zipper clause under 8 U.S.C. section 1252b9. And then the government also believes that the determination and reasonable fear of withholding only proceedings is not a final order of removal is likely mandated by the Supreme Court's interpretation of a final order of removal and is clearly irreconcilable with this court's decision in Ortiz-Alfaro. So the court could, should view it as being effectively overruled by this higher authority, contrary to petitioner's arguments. But your letter is a little bit curious because after setting out all that, you then say that we should exercise jurisdiction in this case anyway. And I wonder if you could explain why that is. Okay. So I guess, so we did cite to De La Rosa Rodriguez in our 28J letter. And while we believe that the government could reach the merits of the decision here in order to protect the reasonable reliance interests of the petitioner and others, which would be distinguishable from the assumption of statutory jurisdiction that the court took in De La Rosa Rodriguez. So because petitioner here filed his petition in reasonable reliance on Ortiz-Alfaro, the court then could reach the merits based on that principle rather than assuming jurisdiction as it had in De La Rosa. And we could do that. I mean, because the letter says we could apply it prospectively and deny the petition on the merits. But I take it if we were to say, well, this is an unexpected change. We're going to exercise jurisdiction. We could exercise jurisdiction and either deny or grant the petition, right? Is that your view? Well, in De La Rosa Rodriguez, I believe that it was that the issue of jurisdiction was so complicated and that the merits of the claim were not meritorious. And so that was it. So if the court were going to grant the petition for review, then it would be a completely different scenario than what was going on in De La Rosa. I understand it's different from De La Rosa, but I thought you were saying that here, unlike De La Rosa, there's the question of whether he was caught unawares by the change in the law. And that would be a basis to exercise jurisdiction either direction, right? Correct. And it's your view that it would be appropriate for us to do that here? Yes. Okay. So are we going to discuss the merits now? We can, Your Honor. Good. Good. I'm really interested in the adverse credibility determination. Could we turn to that, please? I take it your argument is that it's adequately supported? We would argue that it is adequately supported by the record, but we would also argue that the court doesn't even need to reach the adverse credibility determination here because petitioner failed to exhaust the alternative basis for denying of cap protection. Can you go to, I've asked you to address the credibility determination. Would you please address it? Yeah. No. So the immigration judge's decision was based on significant discrepancies between petitioner's testimony, his reasonable fear interview, and his written declaration about the mistreatment he experienced at the hands of the cartel. For example, petitioner's testimony about whether he was tortured by the cartel in Mexico was inconsistent with the record of his reasonable fear interview. Hold on. Hold on. Hold on. Hold on. Hold on. Let's take that one first. The question he was asked is whether he had any injuries, right? And he said... By the immigration judge or... The credible fear interview is what you were just referring to, counsel. Correct. Right. So he's answering a question in the credible fear interview about, did you have any injuries? And he said, no, they didn't cut off any parts to torture me or anything like that. Is that what you're referring to? No. I'm referring to page 243. I'm looking at 246. So I'll look at 243 now. And I'll look at 246. Where do you want me to see on 243? Okay. It is... Sorry, your honor. I believe that the asylum officer explicitly asked him, were you tortured? And... On 240... Well, I've already mentioned. Do you have any injuries? No. They didn't cut off any that. But you think there's another question? I do. I believe there was an instance where the... Maybe I have the site. Near the bottom of 243, in response to... My question right now is about the way you were threatened. And the answer includes, they were asking for 700,000 pesos. They didn't torture me, but they beat me up. Is that... Correct, your honor. That's what I was referring to. So he explicitly stated that he was not tortured. So he also testifies at some length about what he thinks torture is, and his childhood friend who had been kidnapped and then returned because his family couldn't make the ransom, as you know. They found his dismembered body along the side of the roadway. Correct. But the immigration judge found that petitioner's explanations here were not persuasive and contradicted by his earlier testimony and his written declaration where he... Is your position that they're contradicted? Which do you want to rely on as support? Both. Well, but counsel, really, it just seems... I'll just tell you, it seems really unreasonable to me that we would expect someone in this position to understand the legal definition of torture. And over time, of course, the six months we're talking about between the credible fear interview and the hearing testimony, six months passes and he is advancing through the system and he's getting legal advice. And I just... This strikes me as really out there on a limb for the government. Right. So I think it wasn't necessarily that the immigration judge was saying he didn't understand the definition of torture as a legal matter, but that he was trying to... The way he was describing the harm he experienced as torture, and it was contradicted by his earlier testimony, his written declaration where he repeatedly described the mistreatment he endured as torture. And this court has held that when, even if proper explanations for inconsistencies are heard, also supports a different conclusion. And here... Yes, but counsel, you have to... That's not just the soundbite. We look at what was happening in the case, right? And so there's this term torture that is inherently ambiguous. And then we have, as you said, a credible fear and a declaration and a hearing testimony. And he's describing... So for example, he's describing being kidnapped, beaten, threatened with death and having his head dunked in a bucket or bin of water in all three of those places. So it strikes me as that constellation of these common statements. He's entirely consistent on those points, that that constitutes torture, unless the government's going to take the position that that would not rise to the level of torture. Is that the government's position? No, that's not... Again, that's not the government's position that this wouldn't meet the legal definition of torture. That obviously wasn't something that the agency reached here, but it was just that the way Petitioner was describing his mistreatment had changed between his testimony and then his reasonable fear and review. And I don't except if I can... Forgive me for interrupting, but we have so little time. But what I've just described is it's not inconsistent in these ways that I've just identified. He describes those acts, whether we call them torture or not torture, he's described what was happening to him entirely consistent in these ways. So that's the problem I have with the BI lumping that into this umbrella term, which is inherently... We only define the torture in a very amorphous way, and we just say it's an extreme concept. And so I don't know how we get there with that. Let me ask you about the cigarette burn, because the BIA seemed to be really concerned about that. That hadn't been raised earlier. Can you tell whether when he showed his arm at the hearing, whether the IJ saw the scar? So from... I mean, I've obviously read over the transcript. I didn't It wasn't anything in my notes that he had... The immigration judge noted that he could see a scar on his arm, which is typically in the proceedings. If there is a scar or tattoos or something, the immigration judge will describe what they're seeing. And I don't think the immigration judge did that here. It just says nothing, right? We just can't... I think we're looking at the same page. I want to make sure I didn't miss it. Where the lawyer says, go ahead and show... I was just saying, no, it doesn't say anything that I'm aware of. All right. And just to sum up very quickly, we would respectfully ask the court to deny the petition for review in part and dismiss the petition for review in part. Thank you, Your Honors. You're not off the hook quite yet. I think Judge Miller has a question for you. Thank you, Judge Gustin. I just wanted to ask about relocation. And in particular, what the board said about it. I'm looking at the bottom of AR5. And there's a sentence, the applicant does not meaningfully challenge the IJ's findings, referring to relocation, which seems like a failure to exhaust. But then the sentence goes on, and we discern no clear error in the factual findings or legal error. And my question is, is the second half of that sentence a statement by the board about the merits of relocation? And if so, doesn't that fall within the line of cases that say that we treat it as exhausted if the board, in fact, reached the merits? Right. So we did argue in the alternative that the relocation finding was supported by substantial evidence. But I would also note that petitioner's opening brief here, we would argue that he effectively waived the relocation issue by devoting a single conclusory sentence on the issue in his opening brief. All petitioner says is if he has returned to Mexico, it will be easy to find him as the cartel organizations work in all parts of Mexico, and his life will be in danger anywhere he relocates without any citation to any record evidence. So we would argue even if the court were to reach the merits that petitioner had, I mean, excuse me, your honor, that he had waived it. But even if the court did reach the merits, it is supported by substantial evidence. So could I back up because I'm not sure I heard an answer to Judge Miller's question. He has a different question about the BIA statement. The BIA says they discern no clear error. And I think the question was whether or not that is reaching the merits. Does that case not, does that finding not fall within our case law? And you pivoted to a different point in the sequence. My apologies, your honor. So we would argue that the board did find that it was exhausted, that petitioner hadn't exhausted because of that first part of the sentence of him not bringing it up in his brief to the board. So what do you do with the second half of the sentence? That's what Judge Miller is, and both of us now, two of us are validly trying to get you to address the second part of that sentence. Right. So I guess I think the board was just saying in the alternative, even if it had exhausted the issue that, you know, the record did support the immigration judge's findings on that point. Right. But isn't that your problem, that they reached the merits and said they didn't find a clear error? Isn't that exactly why it follows, falls into the other category of cases? I'm not sure I understand your honor's question. I'm not, I'm not trying to be tricky about it, but I am trying to understand your answer. And Judge Miller, who's articulated this probably much more clearly than I, you know, is right. Recognize it, that the BIA says both things. So that isn't, it isn't meaningfully challenged. And then it goes on and says, but we don't, we discern no clear error. I'm paraphrasing in the IJ's decision. So I'm just trying to figure out what your answer is. Why to Judge Miller's question, do you think that does or does not fall into our line of cases? It says if they reach it anyway, then it's exhausted. I was viewing it as just an alternative finding, but I suppose it would fall within the case law that you're referring to, your honor. Okay. I think we're good. Thank you very much for your patience. Thank you, no problem. Great. Opposing counsel, you have a little bit of time. You're muted. You're muted, so you're going to have to back up and start over. There you go. There you go. Thank you. So I just have one point to make on, in terms of the CAC claim. So it is our position that it was not exhausted. Wait, I'm sorry. It is your position that it was? That it was exhausted. Yes. That the petitioner's brief does state numerous citations or does add numerous citations to the facts in the previous paragraph in the same section citing to country conditions on how the collusion between the Mexican government and criminal organizations are rampant in the country. So there absolutely was those citations in regards to relocation. And just to wrap up for the aforementioned reasons, we request the court to reverse the lower court's decisions and remand for further proceedings. Great. Thank you very much. Thank you both for your arguments and patience with our questions. We appreciate it. We're going to take that case under advisement and we'll stand in recess for today. All rise. This court stands in recess for the day.
judges: TASHIMA, CHRISTEN, MILLER